UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON STEWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CLARA, *et al.*,<br><br>    Defendants. | Case No. 18-cv-04119-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 58 |

Defendants' motion for summary judgment is scheduled for a hearing on March 6, 2020. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On July 11, 2018, plaintiff Aaron Steward filed this lawsuit against the County of Santa Clara as well as correctional officers and a nurse who worked in the jail facilities operated by Santa Clara County. During the events that gave rise to this lawsuit, plaintiff Aaron Steward was a pretrial detainee in the custody of Santa Clara County.[1]

The complaint alleges seven causes of action alleging violations of plaintiff's federal constitutional rights and violations of state law. Several of plaintiff's claims arise out of a November 7, 2016, strip/cavity search that was followed by a contraband "potty" watch. Other claims arise

---

[1] Plaintiff has since been convicted of various criminal charges and is serving a 51 year sentence.

out of a July 12, 2017 incident in which plaintiff alleges defendant Deputy Rico West beat him up and falsely claimed that plaintiff was the aggressor, as well as events that followed the July 12, 2017 incident, including an Internal Affairs investigation prompted by a use of force complaint filed by plaintiff's father against West.

At issue in the present motion are plaintiff's claims against defendant Deputy West based on the November 7, 2016 strip/cavity search, plaintiff's claims against defendant Nurse Guerzo about the administration of laxatives during the contraband watch that followed the strip/cavity search, plaintiff's claims against defendant Deputy Graham about an alleged "rough ride" when Graham transported plaintiff in a van from one jail facility to another jail facility after the July 12, 2017 incident between plaintiff and West, and plaintiff's *Monell* claims against the County.[2]

## I.    November 7, 2016 Strip/Cavity Search

On November 7, 2016, a confidential informant reported to jail officials that there were drugs in Module 7C of the jail, and specifically named Cells 2, 8, 13 and 25 as locations where contraband could be found. Morales Decl. ¶ 6. Plaintiff was assigned to Cell 13, along with his cell mate. *Id.* at ¶ 5. Sergeant Jose Morales states, "Based on this intelligence, the Security Enforcement Team was tasked with conducting security/contraband searches of Cells 2, 8, 13, and 25," and Sergeant Morales was the sergeant in charge of the contraband search. *Id.* at ¶ 7. Officers searched the four cells named by the informant, and plaintiff and six other inmates were strip searched. No contraband was found in plaintiff's cell, or ultimately on plaintiff.

Plaintiff alleges that during the visual strip search he was required to squat and cough, and that when he did that, defendant Deputy Rico West stated that he saw something protruding from plaintiff's rectum and that West told plaintiff to "get it out or I will." Marinho Decl. Ex. D at 101-103, 107 (Plaintiff's Depo.). Plaintiff claims that West was lying and did not see anything

---

[2] Defendants did not move for summary judgment on plaintiff's excessive force claims against West based on the July 12, 2017 incident. Defendants did move for summary judgment on plaintiffs' claims against defendants Alvarez, Valle and Le; as discussed *infra*, plaintiff does not dispute that those claims should be dismissed, and thus the Court does not include the facts specific to those claims in the background.

2

protruding from plaintiff's rectum, and plaintiff claims that plaintiff did not have any contraband in his rectum. According to plaintiff, he did not want West to perform a rectal search, and so he asked for gloves and digitally penetrated himself with his right hand for approximately two minutes while West held his left arm. *Id*. at 107-110.

Defendants have submitted evidence, including a video recording of the strip search and the declarations of several deputies involved in the search (although not a declaration from defendant West). *See generally* Morales Decl. ¶¶ 9-20 (describing strip search) & Ex. 1-11 (video recording of strip search); Bettencourt Decl. ¶¶ 5-20 (describing strip search). Defendants contend that this evidence shows the following: multiple deputies were present during plaintiff's strip search; at the time of the search, Deputy West was a trainee who was subject to the command and oversight of senior deputies and supervisors; Deputy Bettencourt, not Deputy West, stated that he saw something protruding from plaintiff's rectum and thus that there was probable cause to place plaintiff on a contraband watch; and nobody ordered plaintiff to digitally penetrate himself and in fact plaintiff did not digitally penetrate himself. *See id.*; *see also* Morales Decl. ¶ 17 ("Nor did Plaintiff on his own accord digitally penetrate himself."). Defendants contend that the video recording conclusively proves that plaintiff's version of events is untrue and that West did not violate plaintiff's rights. Plaintiff asserts that the video recording starts part way through the search when plaintiff is already digitally penetrating himself and thus does not capture the events leading up to the digital penetration. Plaintiff also asserts that the video shows West holding plaintiff's left arm while Deputy Bettencourt is standing in front of plaintiff while he is penetrating himself, and that that the video shows that plaintiff's right hand is gloved and therefore supports his account of events.

**II. Contraband Watch/Administration of Laxatives**

Plaintiff did not remove any contraband during the rectal search, and he claims there was nothing to remove. Deputy Bettencourt and Sergeant Morales decided to place plaintiff on a contraband watch because they believed that he had contraband up his rectum. Bettencourt Decl. ¶¶ 15, 17, 19; Morales Decl. ¶¶ 14-15. Plaintiff was then placed on a contraband watch during which he was held in an isolation cell until he had a bowel movement. According to defendants,

the entire contraband watch lasted approximately nine and a half hours. Defendants have submitted undisputed evidence that West was not involved in the contraband watch, and that he returned to his normal assignments after the strip/cavity search. Bettencourt Decl. ¶¶ 19-20; Rollo Decl. Ex. 2 at 74 (West Depo.).

Defendants have filed a video recording of portions of the contraband watch, the declaration of defendant Nurse Richard Guerzo, a "Custody Nursing Assessment" that Guerzo completed, the Santa Clara Valley Health and Hospital System's Standardized Procedure for Constipation, Sergeant Morales' declaration, and plaintiff's deposition testimony.

Defendants' evidence shows that several hours into the contraband watch, plaintiff was unable to have a bowel movement and he told Sergeant Morales that he wanted something to help him have a bowel movement. Sergeant Morales asked plaintiff, "What do you need . . . You want some laxatives? Is that what you're requesting?" To which plaintiff replied, "Yep. If it's the real deal, that's what it is." Morales Decl. Ex. 12 at 6:47-8:14 (video); *see also* Morales Decl. Ex. 21 at 7:18-22 (Transcript of Video). Morales asked plaintiff if he wanted "something to use the restroom" and plaintiff nodded and said yes. *Id.* at 7:35. Morales asked plaintiff whether he wanted to "pull it out yourself," and plaintiff said that there was nothing to pull out and "Well whatever you have to give me to shit, that's what I'm going to do." Morales Decl. Ex. 13 at 8:15-9:12; Ex. 21 at 8:21 Sergeant Morales confirmed that plaintiff wanted "laxatives." *Id.* at 9:25. Sergeant Morales then called the nurses station for assistance. *See also* Morales Decl. ¶¶ 21-26 (discussing his interactions with plaintiff and Nurse Guerzo's interactions with plaintiff, which he observed).

Defendant Nurse Richard Guerzo was the on-call custody nurse and he reported to the isolation cell where plaintiff was being held. Defendants have submitted Guerzo's declaration, in which he states,

> 1. I have been a Registered Nurse in the State of California since February 2007 without any disciplinary action. I am currently employed as a Clinical Nurse III in the Custody Health Services Division for the County of Santa Clara. My current assignment is at the Main Jail working the evening/early morning shift. I was working that shift on November 8, 2016.
>
> 2. In the early morning hours of November 8, 2016, custodial staff notified the nursing station about an inmate who requested assistance with a bowel movement.

4

> 3. The inmate with the reported constipation issue was Plaintiff Aaron Steward. I reviewed Plaintiff's medical records and the video recording of my interaction with him on November 8, 2016. Attached as Exhibit 1 is a correct copy of my nursing assessment regarding my interaction with Plaintiff on November 8, 2016.
>
> 4. Adult Custody Health Services has a Standardized Procedure for Constipation. It was and is my practice to follow the applicable standardized procedure when dealing with a patient. Attached as Exhibit 2 is a true and complete copy of Adult Custody Health Services Standard Operating Procedure 4130-SP120 – Standardized Procedures for Constipation, rev. 10/16.
>
> 5. Based upon my review of the medical records and video recording (attached as Exhibit 6 to the Declaration of Sgt. Morales), I interviewed Plaintiff in the observation cell. I confirmed he was having difficulty generating a bowel movement. Plaintiff told me he "wanted to get out of there pretty fast, so if you can help me." I confirmed he had no known allergies to the medications in the standardized procedure. I offered Plaintiff laxatives to speed up a bowel movement. (See Exhibit 6 to Declaration of Sgt. Morales at 35:03-39:29).
>
> 6. Plaintiff consented to the administration of laxatives. Because Plaintiff's hands were in mittens, I physically placed the medication in his mouth and gave him some water to swallow it. Plaintiff willingly ingested the laxatives without protest. (Ex. 6 to Morales Dec. at 35:03-39:29).
>
> 7. After administering the laxatives, I left the cell and had no further direct contact with Plaintiff. Plaintiff's chart confirms I followed up with custodial staff to confirm Plaintiff had a bowel movement.[3]

Guerzo Decl. ¶¶ 1-7 (Dkt. No. 58-14). Guerzo's nursing assessment states, *inter alia*, that the "history of presenting illness" was "constipation" and that "pt having a hard time pooping," and lists the medications that were administered. *Id*., Ex. A; *see also* Ex. B (Standardized Procedures).

Plaintiff claims that he did not know what laxatives were and that he did not give informed consent. Plaintiff also claims that Guerzo failed to ask about his medical history to determine whether he had any conditions for which laxatives would be contraindicated, and that Guerzo falsified his records by stating that he was constipated.

### III. July 12, 2017 "Rough Ride"

Several hours after the July 12, 2017 incident in which plaintiff alleges that Deputy West beat him up and falsely claimed that plaintiff was the aggressor, plaintiff was transported from the

---

[3] Plaintiff also claims that after he had a bowel movement, unnamed deputies did not allow him to clean himself, causing feces "to get all over him" and the deputies made plaintiff walk down the hall in front of other inmates and the deputy station. Opp'n at 17. Plaintiff does not claim that either West or Guerzo or any other named defendant was involved in that portion of the contraband watch.

Elmwood jail facility to the Main Jail by defendant Deputy Christopher Graham and another unidentified deputy. Plaintiff claims that Graham and the other deputy shackled plaintiff and placed him in a van without seatbelts. Plaintiff claims that Graham, who was driving, intentionally gave him a "rough ride" by speeding up, turning and braking in such a manner as to cause plaintiff to slide off the metal seat and toss around the back of the van. Plaintiff claims that he hit his head five to ten times during the ride and that he arrived at the jail unconscious. *See* Marinho Decl., Ex. D at 178, 180, 183, 190-196 (Plaintiff's Depo., testifying about "rough ride").

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However,

6

conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(4).

**DISCUSSION**

Defendants have moved for summary judgment on all claims except plaintiff's claims against defendant West arising out of the July 12, 2017 incident.

**I.  Claims against Deputy Rico West Based on Strip/Cavity Search and Contraband Watch**

The complaint alleges three causes of action against defendant West based upon the strip/cavity search and contraband watch: (1) a violation of his Fourteenth Amendment rights pursuant to 42 U.S.C. section 1983; (2) a violation of the Bane Act, Cal. Civ. Code section 52.1; and (3) intentional infliction of emotional distress. Defendants contend that West's conduct did not violate plaintiff's constitutional rights and was neither threatening (an element of the Bane Act) nor egregious (an element of the intentional infliction of emotional distress claim).

The Court concludes that to the extent plaintiff seeks to hold West liable for the decision to conduct the visual strip search, as opposed to the rectal cavity search, that claim lacks merit as there was probable cause for plaintiff to be visually strip searched based upon the information provided by the confidential informant. *See Michenfelder v. Sumner*, 860 F.2d 328, 332-33 (9th Cir. 1988) ("[S]o long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip search has a legitimate penological purpose."). Further, plaintiff has not submitted any evidence that West made the decision to subject him to a visual strip search, and to the contrary defendants have submitted undisputed evidence showing that the decision was made by other officers. *See generally* Morales & Bettencourt Decls. In addition, defendants have submitted undisputed evidence that West was not involved in the contraband watch that followed the strip/cavity search. *See id.*; *see also* Rollo Decl. Ex. 2 (West Depo.).

7

However, to the extent that plaintiff claims that West violated federal and state law by allegedly (1) falsely claiming that he saw contraband in plaintiff's rectum, thus prompting the rectal cavity search; and (2) implicitly threatening plaintiff by telling plaintiff to "get it out or I will," the Court finds that plaintiff has raised a triable issue of fact sufficient to defeat summary judgment. Plaintiff claims that West falsely stated that he saw something protruding from his rectum, and that this happened before the events captured on the video recording submitted by defendants. Plaintiff also claims – and defendants deny, through the declarations of Deputy Bettencourt and Sergeant Morales – that West told plaintiff to "get it out or I will," which plaintiff interpreted as a threat that West would perform a rectal search on him. The video recording begins when plaintiff is naked, standing against the wall, with West holding plaintiff's left arm. Although plaintiff is partially obscured by Deputy Bettencourt, it does appear that plaintiff's right hand is gloved; plaintiff claims that this portion of the video recording is when plaintiff was digitally penetrating himself. The Court cannot conclude that the video recording unequivocally proves that plaintiff's version of events is untrue.

Accepting plaintiff's version of events as true as the Court must on summary judgment, a jury could conclude that West's conduct was "excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332-33 (confirming that searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" violate the Fourth Amendment); *Shorter v. Baca*, 895 F.3d 1176, 1189 (9th Cir. 2018) (in case brought by pretrial detainee challenging strip search policy under the Fourteenth Amendment, noting that "[i]n the past, where we have concluded that the methods used to conduct the search are unnecessary and unduly humiliating to the detainee, we have not deferred to correctional officials' search procedures.). For the same reasons, accepting plaintiff's version of events as true, the Court finds that West is not entitled to qualified immunity on the section 1983 claim because it has been long established that body cavity searches of detainees must be related to a legitimate penological interest and not vindictive or harassing.

Accordingly, the Court GRANTS defendants' motion for summary judgment on plaintiff's section 1983 and state law claims against West to the extent plaintiff alleges that West is responsible

8

for the initial decision to conduct a visual strip search on plaintiff, and to the extent plaintiff alleges that West participated in the contraband watch, and DENIES defendants' motion to the extent that plaintiff's claims are predicated on the allegations that West instigated the body cavity search by falsely claiming to see contraband in plaintiff's rectum and threatening plaintiff to "get it out or I will."

## II. Claims against Nurse Richard Guerzo

Plaintiff alleges two causes of action against Nurse Guerzo: (1) a claim pursuant 42 U.S.C. § 1983 for "Cruel and Unusual Punishment" under the Fourteenth Amendment; and (2) a claim under the Bane Act, Cal. Civ. Code § 52.1. Plaintiff contends that Guerzo "abandoned his role as a medical professional and was complicit in the degradation of plaintiff, putting his health at risk." Opp'n at 13 (Dkt. No. 71. Plaintiff argues that he did not give informed consent to Guerzo for the laxatives and that he did not know what a laxative was. *See* Marinho Decl. Ex. D at 133-134 (Plaintiff's Depo., testifying that he did not know what a laxative was). Plaintiff asserts that Guerzo never explained to him what a laxative was, and that Guerzo did not ask plaintiff about his medical history to determine whether he had any condition that would make stimulant laxatives contraindicated. Plaintiff does not assert that he in fact has any such condition. Plaintiff also asserts that Guerzo falsified his medical records by stating that "constipation" was the "history of presenting illness" on the nursing assessment, when in fact plaintiff requested assistance with a bowel movement because he was on the contraband watch. Finally, plaintiff's opposition also asserts that defendant Guerzo was "complicit in and assisted the officers in their coercive [contraband] search." Opp'n at 13. It unclear from plaintiff's opposition if he is claiming that Guerzo "assisted" the officers in any way aside from administering laxatives to plaintiff.

Defendants contend that the undisputed evidence shows that Guerzo did not participate in the contraband search, and that his only interaction with plaintiff was to administer laxatives to him upon plaintiff's request for medicine to help him have a bowel movement. Defendants also note

9

that plaintiff did not allege in the complaint that Guerzo was involved in the search.[4]

### A. Fourteenth Amendment

"[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (internal quotation marks omitted), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019). "[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id*. at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id*. (internal quotation marks and citations omitted). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (internal quotation marks and citation omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. (internal quotation marks and citation omitted).

The Court concludes that plaintiff has not raised a triable issue of fact as to whether Guerzo violated his right to adequate medical care under the Fourteenth Amendment. Plaintiff has not

---

[4] The complaint alleges that defendant Nurse Richard Guerzo administered laxatives to plaintiff "[d]espite there being no medical indication for laxatives and no informed consent from the patient." Compl. ¶ 144. The complaint also alleges that Guerzo "falsified" plaintiff's medical records by writing that plaintiff was constipated, when "GUERZO knew full well that it was only the deputies who wanted STEWARD to have a bowel movement." *Id*. at ¶ 145. In addition, "[p]rior to administering [the laxatives], GUERZO did not bother to discuss with his patient to find out his medical history to ensure that these stimulant drugs were not contraindicated, for example because of Irritable Bowel Syndrome." *Id*. at ¶ 146.

10

shown that the administration of laxatives put him "at substantial risk of suffering serious harm," nor does he allege that he suffered any injuries or harm as a result of the laxatives. Although he claims that Guerzo did not check his medical history to determine if he had any conditions that were contraindicated for laxatives, plaintiff does not claim that he does, in fact, have a condition for which laxatives are contraindicated. In any event, the video recording shows Guerzo asked plaintiff if he had any allergies prior to giving him the laxatives.

Plaintiff cites *Vaughan v. Ricketts*, 859 F.2d 736 (9th Cir. 1988), for the proposition that "body cavity searches of inmates must be conducted in a reasonable manner," and that "the failure to check inmates' medical records to ensure that individual inmates did not have medical conditions that made the searches dangerous added to the unreasonableness of cavity search." Opp'n at 14. As an initial matter, to the extent that plaintiff is now asserting that Guerzo somehow participated in the strip/body cavity search, that claim is neither alleged in the complaint nor supported by any evidence. If plaintiff is asserting that Guerzo's administration of laxatives is tantamount to participating in a body cavity search, the Court disagrees. Plaintiff requested that the nursing staff provide him with something to bring on a bowel movement, and Nurse Guerzo responded to that request by giving plaintiff laxatives. Nothing about Guerzo's interactions with plaintiff are akin to conducting a body cavity search.

The Court also finds *Vaughan* inapposite. In *Vaughan*, a prison inmate alleged that "correctional medical assistants untrained in involuntary rectal cavity searches conducted them on a table in an open hallway, within view of prison personnel and some inmates. He alleges that the conditions were unsanitary, that some inmates who resisted were forced to submit, and that those searching made no effort to determine whether any of the inmates had medical conditions that would make a digital rectal cavity probe medically inadvisable." *Vaughan*, 859 F.2d at 738, 741. Here, Guerzo did not perform a rectal cavity search on plaintiff, and instead simply administered laxatives after plaintiff requested that nursing staff give him something to help him produce a bowel movement.

In addition, although plaintiff claims that he did not know what laxatives were, the undisputed evidence shows that plaintiff (1) requested that he be given something to bring on a

11

bowel movement, (2) Deputy Morales and Nurse Guerzo repeatedly asked plaintiff if he wanted a laxative and/or told him that he would be given a laxative, and (3) plaintiff repeatedly responded in the affirmative when asked if he wanted a laxative and never raised an objection to being given a laxative. Plaintiff argues that "consent is a factual determination for the jury," citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973), *United States v. Lee*, 356 F.3d 831 (8th Cir. 2003). However, *Schneckloth* and *Lee* are inapposite in that they involved issues of consent in the context of warrantless searches. Plaintiff does not claim that he was forcibly medicated, and plaintiff does not cite any authority suggesting that Guerzo was required to do more to ensure "informed consent" prior to giving plaintiff laxatives.

Finally, plaintiff's claim that Guerzo "falsified" his medical records by stating that plaintiff was constipated does not rise to the level of a Fourteenth Amendment violation. Even if Guerzo "falsified" the nursing assessment by stating that plaintiff was constipated, plaintiff does not connect the alleged falsification to any harm that he suffered. Further, the nursing assessment stated that plaintiff was "unable to poop" and "having a hard time pooping." Guerzo Decl. Ex. A. While plaintiff may disagree with the use of the word "constipation," there is nothing in the evidence before the Court to suggest that Guerzo falsified the nursing assessment.

### B. Bane Act, Cal. Civ. Code section 52.1

Section 52.1 provides that an injured individual may bring a claim against a person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a)-(b). Section 52.1 does not require a showing that a defendant intended to discriminate, nor does it require a plaintiff to be part of a protected class. *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 841-42 (2004). To demonstrate a violation of § 52.1, a plaintiff must show: "(1) Defendants interfered with Plaintiffs' constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion." *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014). Courts have held that

12

1  where a defendant's actions are intentional, the Bane Act does not require threats, coercion, or
2  intimidation independent from those inherent in the alleged constitutional or statutory violation.
3  *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013).

For the same reasons stated above, the Court concludes that plaintiff has not raised a triable issue of fact as to whether Guerzo violated the Bane Act because there is no underlying violation of the Fourteenth Amendment.

## III. Claims against Deputy Christopher Graham

Plaintiff alleges three causes of action against defendant Graham arising out of the "rough ride": (1) a claim pursuant to 42 U.S.C. § 1983 for violation of his rights under the Fourteenth Amendment; (2) a claim under the Bane Act, Cal. Civ. Code § 52.1; and (3) intentional infliction of emotional distress.

### A. Fourteenth Amendment

Defendants move for summary judgment on plaintiff's section 1983 claim on the ground that plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Defendants have submitted evidence showing that there were administrative remedies available to plaintiff and that plaintiff did not file a grievance regarding the "rough ride" against defendant Graham, although plaintiff did file a number of other grievances.[5] *See* Duran Decl. ¶¶ 6, 8-9 (stating that when plaintiff was booked into the Santa Clara County Main Jail on June 6, 2016, he was provided with the Inmate Orientation and Rulebook, and plaintiff did not file a grievance about the "rough ride"); *Id.*, Ex. 1 (copy of Inmate Orientation and Rulebook, containing description of five-step grievance procedure); *see also* Rollo Decl., Ex. 3 at 201-202 (Plaintiff's Depo., testifying that he did not file a grievance against Graham about the "rough ride").

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under

---

[5] According to Captain Thomas Duran, "[b]etween July 6, 2016, and June 17, 2019, Plaintiff filed nineteen (19) grievances about a variety of issues, including use of force, classification, and lack of medical and dental care." Duran Decl. ¶ 7.

13

[42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required whether the action is brought under § 1983 or "any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (quoting 42 U.S.C. § 1997e). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

Here, plaintiff does not dispute that he did not file a grievance, nor does he dispute that there was an available administrative remedy. Accordingly, the Court finds that defendants have met their burden on summary judgment to show that plaintiff failed to exhaust available administrative remedies for his section 1983 Fourteenth Amendment claim against Graham, and that summary judgment is appropriate. *See id.* at 1172.

### B. State law claims

Defendants also moved for summary judgment on plaintiffs' state law claims against Graham based on the failure to exhaust administrative remedies under the PLRA. Defs' Mtn. at 24 (Dkt. No. 58). This argument lacks merit as the PLRA exhaustion requirement only applies to federal claims.

However, state law claims are subject to a claims presentment requirement. The Court ordered supplemental briefing regarding whether plaintiff had complied with the claims presentment requirement under the California Tort Claims Act, Cal. Gov't Code §§ 810, *et seq*. Dkt. No. 78. Plaintiff's supplemental brief and exhibit show that plaintiff submitted a government tort claim on December 21, 2017 with the County of Santa Clara, and that the County rejected the claim. Dkt. Nos. 79-80.

Defendants concede that plaintiff filed the tort claim, but they argue that plaintiff's Bane Act claim should be dismissed because the facts presented in plaintiff's tort claim only amount to a "simple battery" and do not rise to the level of a Bane Act violation. Plaintiff's tort claim alleged that Graham "purposely gave STEWARD a rough ride" and that he "deliberately braked hard"

14

causing plaintiff to slide off the metal seat and be tossed around in the van. The Court finds that these allegations are sufficient to satisfy the claims presentment requirement.

### 1. Bane Act, Cal. Civ. Code section 52.1

Defendants assert in both their reply brief and their supplemental brief that summary judgment is warranted because plaintiff did not specifically oppose their motion with regard to plaintiff's Bane Act claim against Graham. However, defendants' motion did not advance any specific argument about plaintiff's Bane Act claim against Graham, and instead simply argued (incorrectly) that plaintiff's state law claims against Graham should be dismissed for failure to exhaust administrative remedies pursuant to the PLRA.

Defendants' reply and supplemental brief also argue that Graham is entitled to summary judgment on this claim because plaintiff did not show that Graham intentionally interfered with plaintiff's constitutional or statutory rights, nor did plaintiff show that any such interference was accompanied by actual or attempted threats, intimidation, or coercion.

The Court concludes that summary judgment on plaintiff's Bane Act claim is not warranted. Plaintiff claims that Graham intentionally gave him a "rough ride" by driving in manner designed to cause plaintiff to be tossed about in the back of the van while he was shackled and was not wearing a seatbelt. Defendants have not submitted any evidence disputing plaintiff's account as a factual matter. Taking plaintiff's version of events as true, the Court finds that plaintiff has raised a triable issue of fact as to whether Graham intentionally interfered with plaintiff's Fourteenth Amendment rights. In addition, courts have held that where a defendant's actions are intentional, the Bane Act does not require threats, coercion, or intimidation independent from those inherent in the alleged constitutional or statutory violation. *See Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013); *DV v. City of Sunnyvale*, 65 F. Supp. 3d 782, 787-88 (N.D. Cal. 2014); *Bass v. City of Fremont*, No. C 12–4943 TEH, 2013 WL 891090, at *5-6 (N.D. Cal. 2013); *Holland v. City of San Francisco*, No. C 10-2603 TEH, 2013 WL 968295, at *10 (N.D. Cal. Mar. 12, 2013).

### 2. **Intentional Infliction of Emotional Distress**

Defendants contend that "[t]here is simply not enough evidence for Defendants to stand trial on the intentional infliction of emotional distress claim based on the facts in Plaintiff's opposition." Reply at 12. Defendants do not assert any specific argument about why plaintiff's evidence is insufficient to raise a triable issue of fact on this claim.

The elements of the tort of intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993)). For the reasons stated above with regard to the Bane Act claim, the Court finds that summary judgment on plaintiff's IIED claim is not warranted.

## IV. **Claims against Defendants Alvarez, Valle and Le and Does 1-6**

The complaint alleges two causes of action against defendant Tony Alvarez arising out of an investigative interview of plaintiff on July 13, 2017, and a recommendation to rehouse plaintiff: (1) violation of the Fourteenth Amendment (First Cause of Action); and (2) violation of the Bane Act, Cal. Civ. Code section 52.1 (Third Cause of Action). The complaint alleges three causes of action against defendant Captain Amy Le, all arising out of a television interview that she gave in her capacity as President of the Correctional Peace Officers' Association in which she was asked about the July 12, 2017 incident involving plaintiff and West. Those claims are: (1) violation of the Fourteenth Amendment (First Cause of Action); (2) violation of the Bane Act, Cal. Civ. Code section 52.1 (Third Cause of Action); and (3) intentional infliction of emotional distress (Seventh Cause of Action). Finally, plaintiff alleges three causes of action arising out of defendant Sergeant Adam Valle's Internal Affairs investigation into the use of force complaint filed by plaintiff's father regarding defendant West and the July 12, 2017 incident: (1) violation of the Fourteenth Amendment (First Cause of Action); (2) violation of the Bane Act, Cal. Civ. Code section 52.1

16

(Third Cause of Action); and (3) intentional infliction of emotional distress (Sixth Cause of Action).

Plaintiff's opposition concedes that his claims against these defendants should be dismissed. Opp'n at 6. In response to defendants' motion for summary judgment, plaintiff has agreed to dismiss his claims against defendants Tony Alvarez, Adam Valle, and Amy Le. The Court GRANTS defendants' motion for summary judgment as to these defendants and DISMISSES plaintiff's claims against Alvarez, Valle and Le WITH PREJUDICE.

Defendants have also moved for summary judgment on any claims that plaintiff alleges against Doe defendants in the first cause of action. Defendants note that the complaint alleges that unidentified "Jail Staff" were indifferent to plaintiff's medical needs after he suffered injuries from the July 12, 2017 incident involving defendant West. Plaintiff's opposition does not address this issue, and thus it appears that plaintiff has abandoned any such claims.

### V. *Monell* Claim against County

Plaintiff's second cause of action alleges that the County is liable under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), for policies and practices resulting in "the harassment, deliberate indifference and excessive force" suffered by plaintiff at the hands of the individual defendants. Compl. ¶ 218. Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, *see Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).

Defendants move for summary judgment on plaintiff's claims that County policies, practices, or lack of training caused: (1) West to use excessive force and violate plaintiff's rights during the strip search and contraband watch; (2) Graham's "rough ride" from Elmwood to the Main Jail; (3) Plaintiff's alleged unjust placement in "solitary confinement"; (4) the Internal Affairs investigation into plaintiff's father's complaint against West for his use of force on plaintiff; (5) Guerzo's administration of laxatives to plaintiff; and (6) Le's comments during the television

17

interview. Defendants contend that there is no evidence that any of these defendants committed a constitutional violation, and even assuming a defendant violated plaintiff's rights, there is no evidence that a county policy or practice caused the violation.

Plaintiff's opposition focuses solely on the "rough ride" as the basis for his *Monell* claim. Opp'n at 19-20. Accordingly, the Court concludes that plaintiff has abandoned any other basis for the *Monell* claim.[6] As to the "rough ride," plaintiff asserts that the "County was on notice of prior 'rough rides' and failed to investigate." Opp'n at 18. As support for this assertion, plaintiff relies on the declaration of Robert Flores, an individual who was detained at the Santa Clara County Jail in August 2011. Flores Decl. ¶ 2 (Dkt. No. 73). Mr. Flores states that he was transported to Santa Clara County Jail by Morgan Hill police officers, and that on the way to Santa Clara County Jail he complained to the police officers about being left in a hot police car with the windows rolled up and the handcuffs painfully tight. *Id.* ¶ 3. According to Mr. Flores, after they arrived at the Santa Clara jail, the Morgan Hill police officers spoke with unnamed Santa Clara County jail deputies and the deputies were verbally and physically abusive to him. Flores states that the deputies tightened his handcuffs and leg shackles to the point where he was in pain, and "the deputies bent my wrists forcefully in some sort of hold, stepped on the back of my leg shackles, and jammed their fingers behind my ear causing me to yell out in pain and even cry." *Id.* ¶ 5. Mr. Flores states he was forced to sit in the overly tight handcuffs and leg shackles for three to four hours and that he asked for medical assistance but was ignored and that deputies laughed. *Id.* ¶ 9. Mr. Flores states that when he was released from the jail, he waited in the public lobby to be picked up and overheard deputies talking about giving "rough rides":

> 12. As I waited in the public lobby for my girlfriend to pick me up, I was shocked to hear the deputies discussing and laughing about mistreating inmates. One deputy was reporting to the deputy working at the front lobby desk that he had just transported an inmate and had purposely braked hard and swerved his vehicle while driving to toss around the handcuffed inmate who was not wearing a seat belt. I was disturbed to hear them laughing about this abuse and discussing it out in the open as if it was business as usual.

---

[6] Even if plaintiff has not abandoned the other alleged bases for the *Monell* claim, the Court concludes that summary judgment is warranted because plaintiff has not submitted any evidence raising a triable issue of fact that the constitutional violations he alleges that survive summary judgment are the result of a County policy or practice.

*Id.* ¶ 12. Mr. Flores states that he filed a complaint with Internal Affairs about the treatment he had received as well as the deputies laughing about the "rough ride," and that he was interviewed by investigators but that no one from the Sheriff's Office ever followed up on his allegations. *Id.* ¶¶ 14-19. Aside from his own deposition testimony and Mr. Flores' declaration, plaintiff has not submitted any other evidence in support of the *Monell* claim.

Defendants move to strike the Flores declaration on numerous grounds. Defendants assert that plaintiff was required to disclose Flores as a witness under Federal Rule of Civil Procedure 26(a)(1)(A)(i), and that plaintiff's failure to do so precludes him from relying on Mr. Flores' declaration under Rule 37(c)(1). Further, defendants argue that Mr. Flores' declaration is irrelevant as Mr. Flores' claims of excessive force by unnamed deputies in 2011 is irrelevant to plaintiff's claims of excessive force or a rough ride six years later involving different deputies. Defendants also assert that Mr. Flores' statements that he overheard unidentified deputies talking about giving inmates a "rough ride" are inadmissible hearsay. The Court agrees with defendants that the Flores declaration is inadmissible on both hearsay and relevance grounds, and because plaintiff did not disclose Mr. Flores as a witness.

The Court concludes that the County is entitled to summary judgment on plaintiff's *Monell* claim. "A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). Plaintiff's evidence in support of his *Monell* claim consists of his own deposition testimony regarding his claims against West and Graham, and the inadmissible Flores declaration. Neither West nor Graham is a policymaking employee. While the Court concludes that plaintiff's claims against West and Graham survive summary judgment, plaintiff has not raised a triable issue of fact as to whether the alleged constitutional violations he suffered are the result of a County policy or practice.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on the following causes of action: (1) plaintiff's federal and state law claims against defendant West

to the extent they are predicated on allegations that West was responsible for initiating the visual strip search or that he was involved in the contraband watch; (2) all claims against defendants Guerzo, Alvarez, Valle and Le and Doe defendants; (3) plaintiff's section 1983 claim against defendant Graham regarding the "rough ride"; and (4) plaintiff's *Monell* claim against the County.

The Court DENIES defendants' motion for summary judgment on the following causes of action: (1) plaintiff's federal and state law claims against defendant West to the extent they are predicated on allegations that West falsely claimed to see contraband in plaintiff's rectum and threatened to perform a rectal search on plaintiff, thus leading plaintiff to digitally penetrate himself; and (2) plaintiff's state law claims against defendant Graham regarding the "rough ride." In addition, defendants did not move for summary judgment on plaintiff's excessive force claims against West arising out of the July 12, 2017 incident, so they will proceed to trial.

**IT IS SO ORDERED**.

Dated: March 2, 2020

_____
SUSAN ILLSTON
United States District Judge